```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| E. & J. GALLO WINERY,<br><br>      *Plaintiff*,<br><br>   v.<br><br>THREE SIXTY FIVE WINES LLC and<br>CLASSIC WINES, INC.,<br><br>      *Defendants*. | No. 24-cv-00249 (MEF)(JRA)<br><br>**OPINION and ORDER** |

**Table of Contents**

I.   **Background**
    **A. The Allegations**
    **B. The Lawsuit**
    **C. Procedural History and the Motion**
    **D. The Court's Approach**

II.  **Liability**
    **A. General Principles**
    **B. Jurisdiction**
    **C. Service**
    **D. The Plaintiff's Claim**
    **E. The Equities**
    **F. Conclusion**

III. **Remedies**
    **A. Damages**
    **B. Injunction**
    **C. Attorneys' Fees**
    **D. Conclusion**

**IV.   Next Steps**

\*   \*   \*

A winery that uses certain bottles and labels came to believe that another company was relying on closely similar packaging.

The winery sued, but the other company has not appeared.

The winery now moves for default judgment.

The Court pauses briefly before resolving the motion.

\*   \*   \*

**I.   Background**

   **A.   The Allegations**

The relevant allegations for now are as follows.

A winery (the "Winery"[1]) has used particular bottles and labels to package one of its products, a prosecco.[2]  See Complaint ¶¶ 1, 3, 16.

The Winery registered this "trade dress"[3] with the United States Patent and Trademark Office.  See id. ¶¶ 11-15.

Afterward, another company[4] began marketing, distributing, and selling a different prosecco,[5] using assertedly similar trade dress.  See id. ¶ 19.

---

[1]  E. & J. Gallo Winery.

[2]  LA MARCA Prosecco.

[3]  "'Trade dress' refers to the design or packaging of a product which serves to identify the product's source.  It is the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique."  McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 357 (3d Cir. 2007) (cleaned up).

[4]  Three Sixty Five Wines LLC.

[5]  LADY DIVA Prosecco.

### B. The Lawsuit

In light of the above, the Winery, referred to from here as "the Plaintiff," sued the other company, "the Defendant."

The Plaintiff named the Defendant in five counts. Three are federal. See id. ¶¶ 34-55. These include trade-dress infringement claims under the Lanham Act. See id. ¶¶ 34-47. In addition, the Plaintiff pressed two claims under New Jersey law, see id. ¶¶ 56-71, including a state-law trade-dress claim. See id. ¶¶ 56-63.

### C. Procedural History and the Motion

It has been eleven months since the Complaint was filed. See id. at 17.

The Defendant has not appeared, and the Clerk of Court has filed an entry of default. See Clerk's Entry of Default; see generally Fed. R. Civ. P. 55(a).

The Plaintiff now moves for default judgment as to: (a) the Defendant's liability; (b) $64,100 in damages; (c) an injunction; and (d) attorneys' fees.

### D. The Court's Approach

The Court's analysis is in three parts.

First, the Court considers whether to enter default judgment as to the Defendant's liability on the Lanham Act trade-dress claims. See Part II.[6]

---

[6] As noted, the Plaintiff has also pressed other claims. But there seems to be no practical reason to now assess those other claims. The federal unfair competition and false designation of origin claims mainly turn on the same issues as the Lanham Act trade-dress claims. Compare Health & Body Store, LLC v. Justbrand Ltd., 480 F. App'x 136, 145 n.15 (3d Cir. 2012) (listing elements of unfair competition and false designation of origin) with McNeil, 511 F.3d at 357 (listing elements of Lanham Act trade-dress claim). And the Plaintiff suggests its state law trade-dress claims must be assessed under the same standards as its federal trade-dress claims. See Motion for Default Judgment at 13. All of this means that the various claims here would largely seem to rise and fall together. If one claim works, it is likely the others will, too --- and vice-versa.

3

Second, the Court assesses whether to enter default judgment as to the various remedies the Plaintiff seeks. See Part III.

And third, the Court explains why it will briefly hold in abeyance its decision on the default judgment motion. See Part IV.

## II. Liability

### A. General Principles

To assess a default judgment motion, four issues must be taken up: (1) jurisdiction; (2) service; (3) the merits of a plaintiff's claim; and (4) the equities. See Baymont Franchise Sys., Inc. v. Narnarayandev, LLC, 2024 WL 4866502, at *2-*7 (D.N.J. Nov. 22, 2024).

Tick through these below, one at a time.

### B. Jurisdiction

First, does the Court have subject-matter jurisdiction and personal jurisdiction? See id. at *7.

Yes and yes.

There is subject-matter jurisdiction over the Lanham Act trade-dress claims under 28 U.S.C. §§ 1331, 1338(a), and 15 U.S.C. § 1121.

And the Court has personal jurisdiction. The Defendant's headquarters and principal place of business are alleged to be here in New Jersey. See Complaint ¶¶ 4, 8. Those "are paradigm bases for general [personal] jurisdiction," Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (cleaned up), for limited liability companies such as the Defendant. See Carrington Tea Co. v. Pretium Packaging L.L.C., 2024 WL 5170711, at *1 (D.N.J. Dec. 19, 2024) (so holding); Complaint ¶ 4 (alleging the Defendant is a limited liability company).

### C. Service

The next question: was the Defendant properly served? See Baymont, 2024 WL 4866502, at *8.

4

Yes.  See Marino Certification ¶¶ 4-5; id., Exhibit B; see generally Fed. R. Civ. P. 4(h) (describing the legal standards that apply here).

### D. The Plaintiff's Claim

Next: are the Plaintiff's trade-dress claims "solid?"  See Baymont, 2024 WL 4866502, at *8.

To make out a Lanham Act trade-dress claim, "a plaintiff must prove that (1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product."  McNeil, 511 F.3d at 357.[7]

\* \* \*

Of the three boxes, the first and second are checked.

The Plaintiff's trade dress is allegedly registered and incontestable.  See Complaint ¶¶ 11-15, 35, 42.  And a registered trade dress is presumed to be non-functional (the first element) and, when it is also incontestable, distinctive (the second).  See, e.g., Sweet St. Desserts, Inc. v. Chudleigh's Ltd., 655 F. App'x 103, 109 (3d Cir. 2016) (non-functional); Star Pac. Corp. v. Star Atl. Corp., 2011 WL 2413150, at *7 (D.N.J. June 10, 2011) (distinctive) (citing Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (3d Cir. 2000)).

There is no reason to think these presumptions are rebutted here.  And indeed, the Plaintiff affirmatively makes allegations from which it can be plausibly inferred that its trade dress is non-functional and distinctive.  See Complaint ¶¶ 1, 16-18, 22.

\* \* \*

The third of the three required elements --- the "likelihood of confusion[,]" McNeil, 511 F.3d at 357 --- spins off a closer question.

---

[7]  A plaintiff must also "articulate the specific elements which comprise its distinct dress."  Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 309 (3d Cir. 2014) (cleaned up).  Here, the Plaintiff has done so, by including visual representations of the trade dress and quoting the specific language of its trade-dress registrations.  See Complaint ¶¶ 1, 12, 14.

5

At bottom, "likelihood of confusion" is a matter of determining whether "consumers viewing the defendant's trade dress probably would assume that the product it represents is associated with the source of a different product identified by the plaintiff's similar trade dress." Id.

Thinking that through typically involves weighing ten factors. See Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983).

The "single most important factor" is the similarity between (a) the trade dress used by the plaintiff and (b) the allegedly infringing trade dress used by the defendant. See McNeil, 511 F.3d at 359 (so holding).

How to make that judgment?  By asking "[w]hether the [pieces of trade dress] create the same overall impression when viewed separately." Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 713 (3d Cir. 2004) (cleaned up).  This can done by visually comparing the trade dresses --- at least where, as here, the relevant products are generally sold side-by-side.  See McNeil, 511 F.3d at 359; 3 McCarthy on Trademarks and Unfair Competition § 23:58 (5th ed. 2024); see also Complaint ¶ 24 (alleging that the proseccos were "sold to the same consumers through the same channels").

In this case, eyeballing the various pieces of trade dress suggests important similarities.  The prosecco bottles are fairly similar in color.  See Complaint ¶ 1. And they have similar labels --- light blue, and rectangular.  See id. Moreover, silver foil covers the top and neck of the various bottles.  See id.

But there are real differences to be chalked up, too.

The silver foil of the Defendant's bottle is different than the Plaintiff's trade dress.  It is longer and comes down lower. See id.  And the Defendant's foil has no light blue label; the Plaintiff's does.  See id.; see also id. ¶¶ 12, 14.

Nor do the Defendant's labels include any designs in silver ink. See id. ¶ 1; see also id. ¶ 14.

And the shapes of the bottles are somewhat different --- throughout, and especially as they taper towards the base.  The Defendant's bottle flares out a bit at the bottom; the Plaintiff's does not.  See id. ¶ 1.

Bottom line: comparing the relevant trade dresses, the "overall impression[]" is of similarity --- but that impression is far from overwhelming. It is blunted by the various points of contrast listed out above. See, e.g., McNeil, 511 F.3d at 361-62 (identifying similar and distinguishing elements to compare "the overall impressions created by two trade dresses"); A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 216-18 (3d Cir. 2000) (same); see also 3 McCarthy on Trademarks and Unfair Competition § 23:20.50 (5th ed. 2024).

\* \* \*

As noted, other factors matter in the "likelihood of confusion" analysis, too. See Lapp, 721 F.2d at 463 (listing the ten factors that are generally assessed in this context).

Some of these cut in the Plaintiff's favor. For example, the strength of the trade dress, which is the second factor, see McNeil, 511 F.3d at 358, is supported by the allegation that it is registered. See Complaint ¶¶ 11-15; cf. CSC Holdings, LLC v. Optimum Networks, Inc., 731 F. Supp. 2d 400, 407 (D.N.J. 2010).

But there are no allegations as to some other factors. There is nothing, for example, as to the Defendant's intent to imitate the Plaintiff's trade dress (factor five, see McNeil, 511 F.3d at 358), or consumer confusion (factor six, see id.).

\* \* \*

"[A] motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015). And "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned up).

Do the Plaintiff's claims for Lanham Act trade-dress infringement clear the "plausible" bar?

Yes, but not by much. The trade dresses here are similar, as noted above. But they are also meaningfully different. The question is a close one. But given that what is in play are two budget-priced proseccos, see Complaint ¶ 25, there are enough likenesses between the trade dresses to make the Plaintiff's claims viable. See Sabinsa Corp. v. Creative Compounds, LLC, 609 F.3d 175, 183-84 (3d Cir. 2010) ("Where the goods are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products.") (cleaned up).

7

In short: the Plaintiff's claims are strong enough for now, but do not otherwise appear to be especially strong.

This weighs in favor of the conclusion that a default judgment as to liability should not be entered without first giving the Defendant a final chance to appear and contest the case. See Baymont, 2024 WL 4866502, at *6-*7 (explaining why); cf. Russo v. Gov't Emps. Ins. Co., 345 F.R.D. 65, 79 (D.N.J. 2023).

### E.   The Equities

The last issue: to resolve a default judgment motion, the Court must look to the overall equities. See Baymont, 2024 WL 4866502, at *8-*9. This generally boils down to answering three questions. See id. at *7.

First, will the Plaintiff be prejudiced if default judgment is not entered? See id.

Yes. The Plaintiff says the Defendant's failure to appear has prevented it from prosecuting its case and getting relief. See Motion for Default Judgment at 14. That is prejudice. See Baymont, 2024 WL 4866502, at *9.

Second, does the Defendant have an "obviously in-play litigable defense[]"? Id. at *11 (cleaned up).

No. There are no plain-as-day affirmative defenses here, like an "obvious[]" statute of limitations defense. See id. And there is no way to know the particular factual defenses the Defendant may or may not have.

Third and finally: is the default the result of the Defendant's "culpable conduct"? See id. at *7.

Yes. The Defendant was served approximately nine months ago, see Marino Certification, Exhibit B, but it has not filed anything. In addition, the Clerk of Court placed an entry of default on the public docket around eight months ago. See Clerk's Entry of Default. This is a "heads-up," Baymont, 2024 WL 4866502, at *2, that the Defendant has ignored.

To be sure, there is no indication here of "[r]eckless disregard for repeated communications from [the] [P]laintiff or the [C]ourt." Hritz v. Woma Corp., 732 F.2d 1178, 1183 (3d Cir. 1984); see also Baymont, 2024 WL 4866502, at *11 (finding reckless disregard when the defendant failed to respond to multiple motions and orders from the Court to appear). And that

8

can make the "culpable conduct" inquiry especially easy. See Hritz, 732 F.2d at 1183.

But no matter. The Defendant here is a seemingly-sophisticated international business that has been sued in the state where it is "at home," Daimler, 571 U.S. at 137 (cleaned up) --- and it has opted to simply not show up. That is culpable conduct.

### F. Conclusion

Of the four relevant inquiries, three (jurisdiction, service, and the equities) point to entering default judgment. See Parts II.B-C, II.E.

The other inquiry, into the "solid[ness]" of the Plaintiff's claim, Baymont, 2024 WL 4866502, at *8, also points in that direction --- but not in a definitive way. See Part II.D.

In these circumstances, the Court will plan to enter default judgment for the Plaintiff as to liability on its Lanham Act trade-dress claim, but only after giving the Defendant a last chance to appear. See generally Baymont, 2024 WL 4866502, at *6-*7 (explaining why); cf. Russo, 345 F.R.D. at 79.

## III. Remedies

The Plaintiff has also moved for default judgment as to three remedies. Take these in turn.

### A. Damages

Under the Lanham Act, plaintiffs can recover trade-dress damages based on "(1) [the] defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a); see generally 4 McCarthy on Trademarks and Unfair Competition § 30:57 (5th ed. 2024).

These are the sorts of damages the Plaintiff seeks here. See Motion for Default Judgment at 18-19 (so indicating).

The typical way this goes: a plaintiff presses an allegation as to a defendant's sales of an infringing product, and it is then over to the defendant to back out costs and other deductions --- so the court can make a rough profits calculation and determine the damages. See generally Avco Corp. v. Turn & Bank Holdings, LLC, 2024 WL 3439771, at *3-*5 (3d Cir. July 17, 2024); Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 176 (3d Cir. 2005); see

9

also Kars 4 Kids Inc. v. Am. Can!, 8 F.4th 209, 223-24 (3d Cir. 2021).

But here, that is easier said than done.

Rather than including allegations as to the Defendant's sales, the Plaintiff has submitted a certification from a third-party wine importer ("Importer"). See Rodriguez Affidavit ¶ 20. In relevant part, the Importer's certification says the Defendant "received a total of approximately $64,100.00 in connection with the 8,736 cases of [the allegedly infringing prosecco]." Id. ¶ 6.

But it is hard to know what this means. "In connection with" might imply something about sales (or perhaps a cut of sales). But it also might imply any number of other things, like fees paid from the Importer (or someone else) to the Defendant. And while certain sorts of fees (like commissions) might provide a rough enough proxy for sales, others (like slotting allowances) likely shed less light on sales.

In short: interpreting the certification is not straightforward. And context is not clarifying. The certification is spare. And it includes no back-up information.

What this adds up to: it is not clear, at least for now, that the Court has before it solid-enough evidence for assessing the Plaintiff's request for a default judgment as to damages.

### B. Injunction

The Plaintiff also moves for a default judgment as to its request for an injunction as to various aspects of the Defendant's business. See Motion for Default Judgment at 15. The Plaintiff's proposed injunction is at Attachment 4 of its Motion for Default Judgment.

The Court is "vested with discretion as to whether to issue an injunction." Merch Traffic, LLC v. Does 1-100, 686 F. Supp. 3d 380, 384 (D.N.J. 2023) (collecting cases).

But on the current record, the Court would not be inclined to exercise its discretion to enter the proposed injunction. Take two reasons why.

\*    \*    \*

10

First, the Plaintiff has not explained how some parts of the proposed injunction pass muster.  See generally Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010) (holding that a plaintiff has the burden of demonstrating entitlement to a permanent injunction); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (same).

It is one thing to seek to enjoin further "[m]anufacturing, importing, shipping, packaging, marketing, advertising, distributing, offering for sale, or selling" allegedly infringing packaging.  See Motion for Default Judgment, Attachment 4 ¶ 3(b).

But what, for example, is the reason to enjoin the Defendant from "[e]ngaging in any course of conduct likely to cause . . . deception or mistake"?  Id. ¶ 3(c).

"It is a bedrock legal principle that an injunction should not afford more relief than is necessary."  Merch Traffic, 686 F. Supp. 3d at 388; see also id. at 388 n.17 (collecting cases). But the Plaintiff does not explain why anything this broad is "necessary."

And moreover, it is hard to say what the proposed language means.  Employees of the Defendant are covered by the proposed injunction.  See Motion for Default Judgment, Attachment 4, ¶ 3.  And so are "all other persons . . . in active concert or participation with [the] Defendant who receive actual notice of [the injunction]."  Id.

But how are these people to know how to steer clear of a "course of conduct" that would "likely . . . caus[e]" a "mistake"?  And the question is sharper yet because "mistake" is not defined in the proposed injunction.  Cf. Hope v. Warden York Cnty. Prison, 972 F.3d 310, 322 (3d Cir. 2020) (noting that the obligation to make injunctions clear "relate[s] to the court's awesome civil and criminal contempt powers[,]" and is based on the idea that "[p]ersons may not be placed at risk of contempt unless they have been given specific notice of the norm to which they must pattern their conduct") (cleaned up); see generally Merch Traffic, 686 F. Supp. 3d. at 384-88 (discussing related issues).

In sum: as to parts of the proposed injunction, the Plaintiff has not explained how the standards of necessity and clarity are met.

*   *   *

A second issue is more general, and relates to the overall question of whether to enter an injunction.

The Complaint here is focused on one thing: allegations that the Defendant and the Importer worked together to import and then domestically distribute prosecco in the infringing trade dress. See Complaint ¶ 19.  The Complaint asserts that the Plaintiff and the Importer previously came to a settlement agreement and that the Importer stopped its distribution.  See id. ¶¶ 27-32.  Then, it is alleged, the Importer reversed course.  See id. ¶¶ 31, 75.

But the Defendant has put forward evidence that suggests that all of this stopped years ago.  The Importer says that it sold off the last of the Defendant's prosecco in 2022, and that there has been no importation since then.  See Rodriguez Affidavit ¶ 4.

If that is the case, what is the need for an injunction?  The Plaintiff, who bears the burden, see Monsanto, 561 U.S. at 156-57, does not explain.

And explaining may not be straightforward.

First, "an injunction should not afford more relief than is necessary.  And an injunction that would afford no practical relief goes beyond what is necessary, by definition." Merch Traffic, 686 F. Supp. 3d at 388-89.  If there are no more prosecco bottles as of 2022, what "practical relief" is accomplished by telling the Defendant not to distribute prosecco bottles?

Second, to enter an injunction, the Court must, among other things, look to the equities and assess the public interest. See eBay Inc., 547 U.S. at 391; see also Weinberger v. Romero-Barcelo, 456 U.S. 305, 312-13 (1982).

But the Plaintiff does not say how those factors are advanced by an injunction that seems to be just a back-stop --- a bit of insurance should the Defendant get back into infringing, years after it has seemingly stopped, and with no allegations or evidence to suggest it might return to what it had been doing.

And third, look to first principles:

> A permanent injunction is the usual and normal remedy once trademark infringement has been found in a final judgment.  Consider the alternative.  If a court were

12

> to permit the infringer to continue its infringing activities, the result would be a judicially imposed compulsory license given to an infringer. This would permit the likelihood of confusion to continue and deprive the consuming public of a truthful marketplace. Once it has been proven that confusion is likely, this means that customers will be likely to mistakenly attribute to [the] plaintiff defects or negative impressions they have of the infringer's goods or services. That means that the plaintiff's reputation (and the value of the trademark that symbolizes that good will) is at risk because it is in the hands of a stranger who has violated trademark law.

4 McCarthy on Trademarks and Unfair Competition § 30:1 (5th ed. 2024).

These are the core reasons why a permanent injunction is the "usual and normal remedy" in trade-dress contexts. But these reasons are focused on preventing the future harm that would be caused by allowing "the infringer to continue its infringing activities." Do these reasons apply with full force when the only affirmative evidence is that the alleged infringer is not continuing those activities?

There may well be solid answers to the various questions set out here. But the Plaintiff does not speak to them. To obtain an injunction here, it must. See Primepoint, L.L.C. v. PrimePay, Inc., 401 F. App'x 663, 664 (3d Cir. 2010) (holding that plaintiffs bear the burden in this context).[8]

### C. **Attorneys' Fees**

Finally, the Plaintiff moves for default judgment as to its request for attorneys' fees and costs. See Motion for Default Judgment at 19-20.

---

[8] And note: if the Defendant has indeed been done since 2022 with allegedly infringing conduct, there may be questions to answer about the Plaintiff's standing to seek an injunction. See Doyle v. Matrix Warranty Sols., Inc., 679 F. Supp. 3d 42, 44 (D.N.J. 2023).

Under the Lanham Act, a court may award reasonable attorneys' fees to the prevailing party in "exceptional cases."  15 U.S.C. § 1117(a).

The Plaintiff argues this is an "exceptional case" because the Defendant's infringement was willful.  See Motion for Default Judgment at 20.

And the Complaint alleges just that, asserting that the Defendant acted "intentionally and willfully to confuse the consuming public."  Complaint ¶¶ 38, 45, 53, 61, 69.

But these are legal conclusions "done up" as factual allegations, and so they must be put aside.  See Badalamenti v. Resideo Techs., Inc., 2024 WL 4661010, at *11 n.16 (D.N.J. Nov. 4, 2024) (collecting cases).  And once that is done, there are no other allegations that suggest willfulness.

Accordingly, there is no basis for concluding this is an "exceptional case," 15 U.S.C. § 1117(a), on the theory the Defendants have advanced.

### D. Conclusion

Where things stand as to remedies:

First, the factual premise of the Plaintiff's request for damages is, at least for now, unclear.  See Part III.A.

Second, the Plaintiff has not explained how certain parts of its proposed injunction meet the necessity and clarity tests that all injunctions must.  See Part III.B.  Moreover, the Plaintiff has not explained why it is entitled to an injunction given the suggestion in the evidence that the Defendant walked away from any infringing around two years ago.  See id.

Third, there is no basis here for an award of attorneys' fees.  No allegations suggest this is an "exceptional" case.  See Part III.C.

## IV. Next Steps

Given that the Plaintiff's claim is not especially strong, the Court will afford the Defendant a brief final opportunity to appear.  See Part II.D (explaining why).

If the Defendant does not appear on or before January 15, 2025, and begin actively litigating starting that day, the Plaintiff's

motion for default judgment as to liability on the Lanham Act trade-dress claims will be immediately granted.

A default judgment as to remedies is not now appropriate, for two reasons. First, because the Defendant has been given a last chance to appear. And second, because of the issues outlined in Part III.

If and when a default judgment is entered as to liability, the Court will afford the Plaintiff an opportunity to flesh out the record as it may wish as to (a) damages and (b) injunctive relief.

IT IS on this 31st day of December, 2024, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.